UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LAWRENCE J.,[1] | ) | |
| | ) | No. 19 CV 1834 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Young B. Kim |
| | ) | |
| ANDREW M. SAUL, Commissioner of Social Security, | ) ) | |
| | ) | January 9, 2020 |
| Defendant. | ) | |

**MEMORANDUM OPINION and ORDER**

Lawrence J. seeks disability insurance benefits ("DIB") based on his claim that after years of working as a machine assembler and an engineering technician, he became disabled at the age of 59 by several conditions, including severe migraines, sarcoidosis, and degenerative disc and joint disease. Lawrence filed this lawsuit for judicial review of the Commissioner's decision denying his DIB application. Before the court are the parties' cross-motions for summary judgment. For the following reasons, Lawrence's motion is granted, and the government's is denied:

**Procedural History**

Lawrence filed his DIB application in April 2016, alleging a disability onset date of March 30, 2015. (Administrative Record ("A.R.") 172.) After his application was denied initially and upon reconsideration, (id. at 86, 102), Lawrence sought and

---

[1] Pursuant to Internal Operating Procedure 22, the court uses only the plaintiff's first name and last initial throughout this opinion, to protect his privacy to the extent possible.

received a hearing before an administrative law judge ("ALJ"). Following the hearing, at which Lawrence testified along with a medical expert ("ME") and a vocational expert ("VE"), the ALJ concluded that Lawrence is not disabled. (Id. at 27.) When the Appeals Council declined Lawrence's request for review, the ALJ's decision became the final decision of the Commissioner. *See Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). Lawrence then timely filed this action, and the parties consented to this court's jurisdiction, *see* (R. 6); 28 U.S.C. § 636(c).

## The ALJ's Decision

The ALJ followed the standard five-step sequence in evaluating Lawrence's DIB application. *See* 20 C.F.R. § 404.1520(a). At steps one and two, the ALJ determined that Lawrence has not engaged in substantial gainful activity since his alleged onset date and that he has severe impairments in the form of migraine headaches, sarcoidosis, degenerative disc disease of the lumbar spine, hypertension, and mild obesity. (A.R. 19.) The ALJ also considered Lawrence's cognitive disorder at step two but determined that it is not a severe impairment. He reasoned that although Lawrence demonstrated some problems with short-term recall, he had never sought or received treatment and examinations performed by other medical providers revealed that his cognitive functioning is intact. The ALJ also gave great weight to the consulting physicians who all opined that Lawrence has no more than mild, non-severe limitations in any of the paragraph B criteria. (Id. at 20-21.)

After determining at step three that none of Lawrence's impairments meets or medically equals any listing, the ALJ turned to the residual functional capacity

("RFC") assessment and found that Lawrence can perform light work with some additional postural and environmental limitations. (Id. at 22.) The ALJ explained that he gave great weight to the ME's opinion that Lawrence can perform light work and observed that his headaches were largely controlled with conservative treatment. (Id. at 23-24.) He also noted that Lawrence's "treatment records consistently reflect intact cognitive functions, such as normal alertness and orientation, and intact comprehension." (Id. at 24.)

The ALJ found at step four that Lawrence is not able to perform his past relevant work. (Id. at 25.) At step five, the ALJ relied on the VE's testimony and concluded that based on the assigned RFC, Lawrence has skills that would transfer to the work of a dye design checker, a job which exists in significant numbers in the national economy. (Id. at 26-27.) The ALJ overruled Lawrence's objection to the VE's calculation of the number of available jobs, concluding that the VE properly explained his methodology and provided reliable testimony. (Id. at 27.) Based on these determinations, the ALJ found that Lawrence is not disabled.

## Analysis

Lawrence argues that the ALJ committed reversible error in assessing his RFC by failing to properly support the decision to exclude nonexertional limitations that would accommodate his headaches and cognitive problems. He also argues that the ALJ improperly evaluated his subjective symptoms and erred at step five in accepting the VE's testimony with respect to the availability of the dye design checker job. In reviewing the ALJ's decision, the court asks only whether the ALJ

applied the correct legal standards and whether the decision has the support of substantial evidence. *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Substantial evidence means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citations omitted). Although the court's role is not to reweigh the evidence or second-guess the ALJ's judgment, the court will ensure that the ALJ's decision is free of legal error, adequately explained, and supported by "a logical bridge from the evidence" to the ALJ's conclusion. *See Minnick*, 775 F.3d at 935 (quotation and citation omitted).

A.     RFC Assessment

Lawrence first argues that the ALJ's RFC assessment lacks the support of substantial evidence because, according to him, it fails to accommodate non-exertional limitations stemming from his headache pain and cognitive symptoms. Specifically, Lawrence argues that he has greater than mild limitations in the areas of understanding, remembering, or applying information, concentration, persistence or keeping pace, and interacting with others. Starting with alleged social interaction limitations, Lawrence acknowledges that the ALJ found that he has no limitations in interacting with others because Lawrence did not mention any difficulty in that area at the hearing and the record shows he spends time with family and friends, including caring for his young grandson. Lawrence does not argue that the ALJ's reasoning here is unsupported. He instead asserts that he has "daily" episodes of "spacing out" and headaches causing vision distortions and

4

argues that he cannot interact with others "when constantly confronted with such disorienting distractions." (R. 11, Pl.'s Mem. at 9.) First, Lawrence cites no evidence to support his claims that he is "constantly" disoriented, and the record reflects only limited episodes of "spacing out," mostly in March 2015. (A.R. 405.) Second, more recent medical records show that by the fall of 2017 Lawrence had "near resolution" of his vision symptoms. (Id. at 1117.) Third, and most importantly, Lawrence speculates about what the evidence might mean, and essentially asks this court to substitute its judgment for the ALJ's with respect to how his conditions impact his ability to interact with others, which this court cannot do. Thus, substantial evidence supports the ALJ's decision to assign no limitations in the social interaction domain.

Lawrence also faults the ALJ for finding that he has only mild limitations in the areas of understanding, remembering and applying information and concentration, persistence, or pace. Lawrence argues that in so finding, the ALJ improperly rested his determination on Lawrence's daily activities and ability to provide information about his health and work history. But Lawrence neglects to acknowledge that the ALJ also based his decision on the opinions of the consulting physicians, all of whom agreed that Lawrence has no more than mild limitations in these domains. The ALJ explained that he gave great weight to those expert opinions because they were consistent with the record and supported by the fact that Lawrence has never sought or received treatment for mental limitations. (Id. at 20-21.) Lawrence points to the findings of the examining psychologist,

5

Dr. Chirag Raval, who diagnosed him as having a cognitive disorder and explained that Lawrence "does have some issues with concentration and memory that are evident on exam." (Id. at 616-17.) Citing Dr. Raval's findings, Lawrence argues that his limitations are more than mild. (R. 11, Pl.'s Mem. at 10.) But the state consulting physicians had access to Dr. Raval's report, and they concluded that his findings, including the diagnosis of cognitive disorder, reflect only mild limitations. Lawrence does not challenge the ALJ's decision giving great weight to the consulting physicians' assessments nor point to any evidence showing that the ALJ overlooked or glossed over the severity of his cognitive issue. Accordingly, Lawrence has not shown that this aspect of the ALJ's decision lacks the support of substantial evidence.

However, Lawrence gains traction when he argues that the ALJ failed to adequately explain the decision to exclude from the RFC accommodations for his mild limitations in the domains of understanding, applying, and remembering information, and concentration, persistence, or pace. It is well-established that in crafting the RFC, the ALJ is required to consider the combination of all of the claimant's impairments, including those that are not severe. *See Ray v. Berryhill*, 915 F.3d 486, 492 (7th Cir. 2019). Although by no means is it a given that a mild limitation in mental functioning will impact a claimant's ability to secure employment, *see Sawyer v. Colvin*, 512 Fed. Appx. 603, 611 (7th Cir. 2013), the ALJ is still required to evaluate the effect of any mild limitations on the RFC, *Simon-Leveque v. Colvin*, 229 F. Supp. 3d 778, 787 (N.D. Ill. 2017). Courts in this circuit

6

have routinely remanded ALJs' decisions that fail to explain how mild limitations in mental functioning assessed at step two are reflected in the RFC evaluation. *See, e.g., Judy D. v. Saul*, No. 17 CV 8994, 2019 WL 3805592, at *4 (N.D. Ill. Aug. 13, 2019); *Diaz v. Berryhill*, No. 2:17-cv-314, 2018 WL 4627218, at *5 (N.D. Ind. Sept. 27, 2018) (collecting cases); *see also Muzzarelli v. Astrue*, No. 10 CV 7570, 2011 WL 5873793, at *23 (N.D. Ill. Nov. 18, 2011) (holding that if ALJ believed mild limitations assessed at step two "did not merit a non-exertional limitation in the RFC, he was obligated to explain that conclusion so that we can follow the basis of his reasoning"). That is because even mild limitations in domains like concentration, persistence, or pace can impact a claimant's ability to work, especially in skilled or semi-skilled positions.[2] *See Dawn W. v. Berryhill*, No. 17 CV 190, 2019 WL 2085196, at *4 (N.D. Ill. May 13, 2019).

Here, after finding mild limitations in the domains of understanding and concentration, the ALJ failed to include any nonexertional limitations in the RFC and failed to explain the absence of such limitations. (R. 11, Pl.'s Mem. at 7, 9-10.) The ALJ's RFC analysis is almost entirely tailored to Lawrence's physical limitations, with very little reference to or discussion of his cognitive limitations. In fact, after acknowledging at step two that Lawrence has a cognitive disorder that causes mild functional limitations, (A.R. 20-21), the ALJ only mentioned cognitive functioning in the context of Lawrence's migraines. The ALJ wrote that Lawrence's migraines are not significantly limiting because "treatment records consistently

---

[2] The only job the ALJ found Lawrence can perform given his RFC is a skilled position. (A.R. 26.)

7

reflect intact cognitive functions, such as normal alertness and orientation, and intact comprehension," and in 2018 "neurological examination continued to show intact comprehension, fluent speech, and alert and oriented status." (Id. at 24.) But the ALJ made no reference in the RFC analysis to his previous conclusion that Lawrence is mildly limited in concentration and understanding, nor did the ALJ make any attempt to reconcile the findings of mild limitations with the absence of accommodating nonexertional limitations. Simply put, the court has no way of reviewing the ALJ's decision to exclude nonexertional limitations from the RFC assessment because the ALJ did not explain that decision. *See Judy D.*, 2019 WL 3805592, at *4-*5. Accordingly, the case must be remanded so that the ALJ can incorporate into the RFC nonexertional limits accounting for Lawrence's mild limitations in understanding, remembering, and applying information, and concentration, persistence, or pace, or explain why such limitations are unwarranted.

In the interest of completeness, the court also notes that Lawrence argues that the ALJ should have included an accommodation in the RFC for off-task time during migraines. But the ALJ pointed to record evidence demonstrating that Lawrence is able to manage his migraines with over-the-counter medication and that he had gone for long periods (six months at one point) without having any migraines at all. (A.R. 24.) Those reasons provide adequate support for the ALJ's decision not to include migraine-related off-task time in the RFC.

## B. Subjective Symptoms and ME's Opinion

Lawrence also argues that the ALJ failed to articulate a sufficient justification for not fully crediting his subjective symptoms. The court is especially deferential to an ALJ's evaluation of a claimant's subjective statements and will reverse only when the ALJ's evaluation is "patently wrong." *See Burmester*, 920 F.3d at 510-11. Here Lawrence faults the ALJ for failing to provide "specific examples" of inconsistencies between his testimony and the record and for basing his conclusion on a lack of supporting objective evidence. (R. 11, Pl.'s Mem. at 11-12.) Contrary to Lawrence's assertions, the ALJ did point to specific inconsistencies in his testimony. Specifically, he noted that Lawrence reported being unable to walk for more than a half block but later testified that he walks a mile and a half at a time with his grandson. (A.R. 23.) An ALJ may point to a mismatch between a claimant's subjective symptoms and the objective evidence as evidence of symptom exaggeration, so long as that is not the only reason the ALJ provides. *See* SSR 16-3p, 2017 WL 5180304, at *5 (Oct. 25, 2017) (observing that "objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms"); *Jones v. Astrue*, 623 F.3d 1155, 1161 (7th Cir. 2010). Under SSR 16-3p the ALJ is required to consider factors such as medication efficacy and side effects, daily activities, treatment received, and precipitating pain factors in assessing the severity of a claimant's symptoms. *See* SSR 16-3p, 2017 WL 5180304, at *7-*8. Here the ALJ discussed a number of these factors in addition to pointing out the mismatch between Lawrence's descriptions

9

and the record. The ALJ specifically noted that Lawrence's migraines were controlled well with conservative treatment, that he received less migraine treatment than one would expect given his description, and that he engages in significant daily activities like shopping and caring for a small child. (A.R. 24-25.) Taken together, those reasons are sufficient to provide the requisite logical bridge for the ALJ's symptom assessment.

Lawrence also argues that the ALJ did not sufficiently explain his decision to give great weight to the ME's opinion. The ALJ wrote that the ME's opinion is generally consistent with the record, but according to Lawrence "this is not the case," and the court cannot "simply take the ALJ's word for it on such pivotal conclusions." (R. 11, Pl.'s Mem. at 12.) But Lawrence does not explain why he believes the ALJ erred in finding the ME's opinion consistent with the record. The ALJ explained that the record generally reflects conservative treatment and that Lawrence's conditions were well-controlled with medications. Lawrence points to no evidence undermining that finding. Again, Lawrence's disagreement with the weight the ALJ assigned to the ME's opinion is simply insufficient to establish that the ALJ's decision lacks the support of substantial evidence.

**C. Step Five**

Given that the case is being remanded for a reassessment of the RFC, the court will not address Lawrence's arguments with respect to the step-five finding, as those arguments may be rendered moot should the ALJ assign a new RFC on remand. But the court will point out that Lawrence is incorrect when he argues

that the ALJ's decision must be reversed because the Commissioner was only able to identify one job that he is able to perform. The applicable regulation makes clear that the Commissioner need only identify one occupation to meet his step-five burden, so long as there are significant number of jobs in that occupation. *See* 20 C.F.R. § 404.1566(b); *Coleman v. Astrue*, 269 Fed. Appx. 596, 602 (7th Cir. 2008); *Todd M.F. v. Saul*, No. 18-cv-019-CJP, 2018 WL 5923700, at *4 (S.D. Ill. Nov. 13, 2018). On remand, the ALJ should consider and address Lawrence's step-five arguments as needed.

## Conclusion

For the foregoing reasons, Lawrence's motion is granted, the government's is denied, and the case is remanded for further proceedings consistent with this opinion.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**